UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
Apr 09 2018
U.S. DISTRICT COURT
Northern District of WV

Friedrichs Harris, Administrator of the
Estate of Evan M. Harris, deceased,

    Plaintiff,

v.                                                          Civil Action No. _2:18-cv-39_ (Bailey)

Jennifer Randall Reyes and
Big Top Counseling & Consulting, LLC

    Defendants.

## COMPLAINT FOR DAMAGES

NOW COMES PLAINTIFF, Friedrichs Harris, as Administrator of the Estate of Evan

M. Harris and its beneficiaries who for their Complaint against Defendants state as follows:

**INTRODUCTION OF THE PARTIES:**

1.    Plaintiff's decedent, Evan M. Harris was born on May 25, 1992 in New

Orleans, Louisiana.

2.    Evan M. Harris is the son of Plaintiff Friedrichs Harris, M.D. and Kathleen

Stull Harris.

3.    Plaintiff Friedrichs Harris and Kathleen Stull Harris are the beneficiaries of

the Estate of Evan M. Harris.

4.    Plaintiff Friedrichs Harris and Kathleen Stull Harris are residents of the State

of Louisiana.

5.    On the 9th day of March 2016, Friedrichs Harris qualified as the

Administrator of the Estate of Evan M. Harris. A copy of the Administration

letter is attached hereto as Exhibit A.

6.    Defendant Jennifer Randall Reyes is a resident of Harrison County, West Virginia, which is within the Northern District.

7.    Defendant Big Top Counseling & Consulting, LLC is a West Virginia Limited Liability Company, with its principal place of business in Harrison County, West Virginia, which is within the Northern District of West Virginia.

8.    At all times relevant herein, Defendant Jennifer Randall Reyes was the managing member of Defendant Big Top Counseling & Consulting, LLC.

9.    The acts of negligence and gross negligence and/or willful, wanton and reckless conduct, all took place in Davis, West Virginia, which is within the Northern District.

**JURISDICTION AND VENUE:**

10.    Jurisdiction of this Court is invoked pursuant to: (a) 28 U.S.C. § 1332(a), (b), and (c); and (d).

11.    The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

12.    Venue is appropriate in this Court pursuant to the provisions of 28 U.S.C. § 1391(a), (b) and (c).

**BACKGROUND INFORMATION:**

13.    Plaintiff Friedrichs Harris and his wife Kathleen enrolled their son, Evan M. Harris, into the Journey WV program at Q & A Associates, Inc.'s facility, which is a troubled teen and young adult industry that allegedly provides services to these persons to mold them into productive members of society, in Davis, West Virginia.

14.    Prior to his participation in the program, Q & A Associates, Inc.'s personnel
       required Evan M. Harris to undergo a complete psychological evaluation.

15.    The psychological evaluation was performed by Kevin Fenstermacher, Ph.D.
       and revealed a myriad of emotional and psychological needs that Evan M.
       Harris required be met for his success in any program.

16.    The psychological evaluation was committed to a written report authored by
       Kevin Fenstermacher, Ph.D.

17.    Dr. Fenstermacher's report provided a listing of medications and why Evan
       M. Harris had been prescribed them.

18.    Dr. Fenstermacher's report made it very clear that Evan M. Harris required
       consistent efforts and prompting to take his medications.

19.    Dr. Fenstermacher's report made it clear that Evan M. Harris needed to take
       his medications as prescribed in order to maintain his level of functioning.

20.    Dr. Fenstermacher's report revealed that Evan M. Harris was intellectually
       limited, impulsive and he had a troubled past which required him to be
       closely monitored, supervised, and encouraged in order to progress.

21.    Dr. Fenstermacher concluded that Evan M. Harris lacked legal competency.

22.    Dr. Fenstermacher's report detailed previous self-injurious behaviors and
       suicidal ideations when Evan M. Harris was not coping well.

23.    Dr. Fenstermacher's report states that Evan M. Harris had been dealing with
       substance and addiction issues that needed to be addressed during his
       participation in the program.

24.    Dr. Fenstermacher concluded in his report that Evan M. Harris be closely followed by his psychiatrist.

25.    At the conclusion of his report, Dr. Fenstermacher made 18 different recommendations to these Defendants and to representatives from Q & A Associates, Inc. for Evan's successful participation in the subject program.

26.    Dr. Fenstermacher's recommendations included that Evan needed therapeutic supports; Evan should continue to participate in individual and group-related interventions; continuing to prompt his self-reflection; Evan should begin to explore the issues of his adoption; identity growth and development; Evan should participate in a substance abuse prevention curriculum that is integrated into the overall treatment; Evan have ongoing family contact and therapy; Evan needed to be involved in prosocial, recreational or community oriented service, but only after he has stabilized in his subsequent treatment program; Evan should continue to participate in regular physical exercise and related recreational activities as a part of his overall wellness plan; Evan should continue to be followed for medication management with his psychiatrist; Evan's intellectual problems required that his learning should be challenging but not overwhelming and that he should be provided with the necessary support to encourage success while demanding growth; Evan's therapeutic interventions should continue to target Evan's flexibility and ability to tolerate change and cope with unanticipated frustration or disappointment; Evan needed to be taught coping skills, such as a specific "toolbox" of coping that Evan engages in when

4

there is an unexpected change or when he is highly frustrated or stuck cognitively; Evan had to be educated about his rigidity and help him gain insight into how enhanced flexibility can create improvements in his moods and relationships; Evan needed more direct, explicit instruction than would be expected given his intellectual abilities; and, that the therapist had to teach Evan problem-solving and emotional regulation.

27.    Upon information and belief, Dr. Fenstermacher's report was provided to Defendant Jennifer Randall Reyes as the counselor to provide services to Evan M. Harris while he was participating in the Journey WV program.

28.    During his participation in the program, Evan M. Harris was requested to sign a document styled Informed Consent for Mental Health Counseling Services, a copy of which is attached hereto as Exhibit B.

29.    In addition to discussing Informed Consent, Exhibit B also discusses other topics like Confidentiality, Social Media, How Counseling/ Therapy Works, Counseling/Therapy Outcomes, Billing and Missed Appointment Policy.

30.    Exhibit B expressly authorized these Defendants to contact Paul Pelts, M.D. and Evan's parents if these Defendants believed that it was warranted by the circumstances, which these Defendants never did.

31.    Instead of meeting the psychological needs of Evan M. Harris, as outlined in the psychological evaluation, Defendant Jennifer Randall Reyes and Big Top Counseling & Consulting, LLC watched Evan M. Harris deteriorate physically and emotionally.

32.    Defendants Jennifer Randall Reyes and Big Top Counseling & Consulting, LLC
were provided information concerning Evan M. Harris by virtue of a
computer program called BestNotes, which was being utilized to document
Evan's daily progress in the program and included specific information that
should have led these Defendants to conclude that Evan M. Harris was failing
in the program and that their interventions were not adequate to save his
life.

33.    On December 3, 2015, Evan M. Harris packed up his belongings and eloped
from the facility.

34.    On December 21, 2015, John Doe, another participant in the program and a
housemate of Evan M. Harris, died from hanging himself in the barn on Q & A
Associates, Inc.'s premises. (His name is not being used in order to protect his
identity and to protect his family's desire for privacy and from unwanted
publicity associated with the public nature of legal proceedings and their
ready access by others on the internet.)

35.    Evan M. Harris and other program participants knew that John Doe had
committed suicide by hanging in the barn, but Defendants Jennifer Randall
Reyes and Big Top Counseling & Consulting, LLC did not provide the
counseling services that he needed to protect him during this very vulnerable
time.

36.    As early as December 24, 2015, Keith Bishop from Q & A Associates, Inc. was
receiving reports that Evan M. Harris was cutting his arm and was expressing
suicidal ideations over a breakup with a female participant in the program.

37.    These same communications of actual instances of personal harm and
       suicidal ideations were made by Evan M. Harris to Defendant Jennifer
       Randall Reyes during counseling sessions.

38.    The document titled Informed Consent for Mental Health Counseling
       Services, Inc. specifically authorized Defendants Jennifer Randall Reyes to
       breach confidentiality and report these conditions to others because Evan
       posed a serious risk of harm to himself.

39.    Q & A staff members were told that Evan M. Harris was regularly purging,
       which upon information and belief Defendant Jennifer Randall Reyes was
       aware.

40.    Defendant Jennifer Randall Reyes knew or should have known that purging
       would limit the absorption of his medications and was indicative of
       underlying disorders that were not being addressed by her or by members of
       the Q & A staff.

41.    On January 12, 2016, Evan M. Harris borrowed money from Sandy
       Schmiedeknecht to buy cigarettes. He left the store and walked to the bank
       where he withdrew money and used it to purchase a bottle of Jack Daniels
       whisky, which was reported to Defendant Jennifer Randall Reyes.

42.    On January 14, 2016, Angela Shockley from Q & A Associates, Inc. again had
       to locate Evan M. Harris after he eloped from the program, which was also
       reported to Defendant Jennifer Randall Reyes.

43.    On January 18, 2016, Evan M. Harris again left the facility. He was found
       walking along Cortland Road in Tucker County by Angela Shockley after he

had again eloped from the facility, which was also reported to Defendant

Jennifer Randall Reyes.

44.     On January 23, 2016, Evan M. Harris expressed a strong desire to drink

alcohol and was provided counseling by Mark Shockley about addiction and

he offered to take him to AA meetings, but there were no interventions by

these Defendants to address his addiction issues.

45.     During the same time period that Evan M. Harris's emotional condition was

deteriorating, he began refusing to take his medicine and it was discovered

that he was not taking his medications as prescribed, all of which was known

by these Defendants.

46.     The psychological report required by Q & A Associates, Inc. made it clear that

taking his medications was critical for Evan M. Harris and his mental

stability, all of which was well-known to Defendants Jennifer Randall Reyes

and Big Top Counseling & Consulting, LLC.

47.     Instead of regularly reporting the continuing deterioration of Evan M.

Harris's condition to his parents, Defendant Jennifer Randall Reyes, along

with the assistance of Q & A Associates, Inc.'s officers and employees began a

systematic effort to limit his communications with them.

48.     As is documented in the corporate records of Q & A Associates, Inc., members

of the management team and the staff encouraged Friedrichs Harris and

Kathleen Harris to limit or end communications with their son early on in the

program. Upon information and belief, Defendant Jennifer Randall Reyes was

aware and was a willing participant in the limitation of Evan's access to his parents.

49.   The records demonstrate that Evan M. Harris was not taking his medications that he needed to treat his bipolar disorder and other medical conditions, which went unreported to Evan Harris's parents and went unreported to his psychiatrist Paul Pelts, M.D., but these Defendants were aware of but did not report.

50.   During his stay and while under the care of Defendants Jennifer Randall Reyes and Big Top Counseling & Consulting, LLC, Evan M. Harris was engaging in destructive behavior, including purging, cutting and substance abuse, which went unreported to Evan M. Harris's parents and to his psychiatrist Paul Pelts, M.D.

51.   On the days leading up to Evan M. Harris's suicide, Defendants Jennifer Randall Reyes and Big Top Counseling & Consulting, LLC were aware of his deteriorating condition, addiction issues, his impulsivity, and their own notes reflect that information, but did nothing to help him.

52.   Defendant Jennifer Randall Reyes knew from her prior experiences with suicides and deaths at these types of facilities that deaths of participants posed a particularly delicate and potentially deadly effect on the remaining program participants, but fraudulently withheld such information from Plaintiff and the public-at-large.

53.   Because there were no efforts made by these Defendants to assist the other program participants in coping with the death of John Doe, a second death

9

occurred on January 24, 2016 when Evan M. Harris was found hanging in the same barn.

54.     Evan M. Harris had been exhibiting self-injurious behaviors, impulsive behaviors, and other serious emotional issues that went unreported to Friedrichs and Kathleen Harris and in violation of the duties that these Defendants had to them and to their son Evan M. Harris.

55.     Evan M. Harris's death was entirely foreseeable to these Defendants who willfully, wantonly and recklessly disregarded the warning signs that his death by suicide was about to occur.

56.     Evan M. Harris's pleas for help in the weeks and days leading up to his death, including his refusal to take his medicines on the day in question, went ignored by these Defendants and were not reported to Evan Harris's parents and his psychiatrist Paul Pelts, M.D.

57.     As these Defendants are healthcare providers, in accordance with the Medical Professional Liability Act, Plaintiff has obtained the services of an expert witness Chris C. Clatterbuck, Ph.D., a licensed psychologist, to review the records from Paul Pelts, M.D., Kevin Fenstermacher, Ph.D., Q & A Associates, Inc.'s records, and the records provided by these Defendants.

58.     Plaintiff's expert has signed an executed under oath an Affidavit and Screening Certificate of Merit.

59.     The Affidavit and Screening Certificate of Merit was provided to these Defendants by certified mail-return receipt requested.

60.     The time in which these Defendants had to respond to the Notice of Claim

and Screening Certificate of Merit has expired on April 8, 2016, and this

Complaint has been filed in accordance with the statutory scheme applicable

to causes of action against healthcare providers in the State of West Virginia.

### COUNT ONE: BREACHES OF THE STANDARD OF CARE

61.     Friedrichs Harris as Administrator of the Estate of Evan M. Harris does

hereby restate all allegations contained in this Complaint in this paragraph as

if the same were reprinted herein.

62.     These Defendants had a duty to the decedent Evan M. Harris and to his

parents to provide services to Evan M. Harris in accordance within the

standard of care applicable to them.

63.     Exhibit B specifically warranted that Defendants will be complying with the

Ethical Principles and Standards for the American Counseling Association

and laws of the State of West Virginia when these Defendants were providing

services to Evan M. Harris.

64.     The American Counseling Association Standards of Practice is a written

document, attached hereto as Exhibit C, which outlines the duties that these

Defendants had to Evan M. Harris in providing services to him and were

those standards that these Defendants warranted that they would be

providing services to Evan M. Harris.

65.     The American Counseling Association Code of Ethics from 2014 is a written

document, attached hereto as Exhibit D, which outlines the ethical principles

that these Defendants were to follow in providing services to Evan M. Harris

and were those standards that these Defendants warranted that they would be providing services to him.

66.    <u>W.Va. Code</u> §9-6-9 required these Defendants to report Evan M. Harris' condition to the authorities if he posed a reasonable risk of harm to himself or others, which is also a standard of care for these Defendants in the State of West Virginia. Violation of this statute by these Defendants is prime facie evidence of negligence.

67.    Standards for counselors in the industry also provide standards of care for these Defendants to follow when providing services to Evan M. Harris and the psychological evaluation for Evan M. Harris provide specific guidance to these Defendants in providing care and treatment to him.

68.    Plaintiff contends that these Defendants breached the standard of care in providing services to Evan M. Harris in the following ways:

a.    Defendant Jennifer Randall Reyes had a duty to perform an intake and to perform an initial assessment of Evan M. Harris. There are no documents in her records documenting that these things were done, which is well-below the standard of care.

b.    Defendant Jennifer Randall Reyes failed to review available records of past care by other professionals. When counselors learn that their clients are in a professional relationship with other mental health professionals, they request a release from the client to inform the other professionals and strive to establish positive and collaborative professional relationships. Defendant Reyes did not do that. She did not do anything to foster the continued relationship with Paul Pelts, M.D., the physician who had been treating Evan since he was about 15 years of age. Her failure to contact Dr. Pelts was reckless misconduct on her part.

c.    Defendant Jennifer Randall Reyes did not make regular assessments of Evan's risk of self-harm or harm to others. She had a duty to assess Evan's mental status: mood, orientation, affect, thought content, thought processes, presence of psychosis, and suicidal or homicidal

ideations. Her SOAP notes are poor and do not follow subjective, objective, assessment and plan requirements and was below the standard of care.

d.  Defendant Jennifer Randall Reyes did not properly document her client's condition and the changes in his condition, despite obvious evidence from the BestNotes that Evan's condition was changing for the worse. Counselors are required to include sufficient and timely documentation to facilitate the delivery and continuity of services. Counselors take reasonable steps to ensure that documentation accurately reflects client progress and services provided.

e.  When the first death occurred, there was no discussion by Defendant Jennifer Randall Reyes in her documentation that she provided Evan any support. Cluster suicides are a well-documented phenomenon, which Defendant Jennifer Randall Reyes knew or should have known, and she should have taken steps to prevent. When Evan mentioned suicide to her, Defendant Jennifer Randall Reyes reaction was "I told him he would not be here to see what other reaction would be." This statement documented in the medical record for Evan M. Harris demonstrates a lack of empathy, lacks confrontation, and it demonstrates Defendant Jennifer Randall Reyes lack of awareness of the seriousness of Evan's condition and the danger he posed to himself, all of which is below the standard of care.

f.  Defendant Jennifer Randall Reyes did not review or make use of the well-developed recommendations from Dr. Fenstermacher to provide proper care and services for Evan M. Harris. Based upon the Fenstermacher report, Evan M. Harris needed a great deal more from his counselor which Defendant Jennifer Randall Reyes did not provide.

g.  Defendant Jennifer Randall Reyes failed to provide any written treatment plan for Evan M. Harris. Counselors and their clients work jointly in devising counseling plans that offer reasonable promise of success and are consistent with the abilities, temperament, developmental level, and circumstances of clients. Counselors and clients regularly review and revise counseling plans to assess their continued viability and effectiveness, respecting clients' freedom of choice. Jennifer Randall did not devise an effective counseling plan to deal with her client's changing mental and emotional condition. She was required to adjust or re-evaluate the plan as Evan's condition changed, which she did not do. There were no treatment goals identified or documented for her patient, which is below the standard of care.

13

h.  Defendant Jennifer Randall Reyes did little if anything to promote the well-being of Evan M. Harris. He needed care and services that she was not capable of providing, but she did not inform anyone of those facts, nor did she enlist the help of other clinicians in providing services that Evan needed, which she warranted she would do and the standard of care required, but she did not do.

i.  The ACA Code of Ethics required Defendant Jennifer Randall Reyes to recognize that support networks hold various meanings in the lives of clients and consider enlisting the support, understanding, and involvement of others as positive resources, when appropriate, with the client's consent. Defendant Jennifer Randall Reyes made minimal effort to convince her client that she should be able to communicate with his parents about his condition and changes in his condition. The records or the absence of the same demonstrate that Defendant Jennifer Randall Reyes did not prioritize Evan's need for family support, despite the recommendations from Dr. Fenstermacher in his report.

j.  The ACA Code of Ethics requires counselors to protect the confidential information of prospective and current clients. Counselors can disclose information only with appropriate consent or with sound legal or ethical justification. Defendant Jennifer Randall Reyes had sufficient legal and ethical justification to report her client's changing condition to his parents and certainly to Paul Pelts, M.D., which she did not do, but which she specifically warranted she would do on Exhibit B, which was below the standard of care.

k.  The ACA Code of Ethics provides that counselors must, at initiation and throughout the counseling process, inform clients of the limitations of confidentiality and seek to identify situations in which confidentiality must be breached. Defendant Jennifer Randall Reyes does not document any such communications anywhere in her records about her discussions with Evan M. Harris, which was below the standard of care.

l.  Defendant Jennifer Randall Reyes had a duty to breach confidentiality to protect her client's life, which she did not do and was below the standard of care.

m.  The ACA Code of Ethics requires counselors to keep information confidential, but that requirement does not apply when disclosure is made to protect the client or identified others from serious and foreseeable harm or when legal requirements demand that confidential information must be revealed. Counselors are to consult with other professionals, like Paul Pelts, M.D. when in doubt as to the

14

validity of an exception, which the standard of care required. Defendant Jennifer Randall Reyes did not do that, which the standard of care required.

n.  The ACA Code of Ethics requires that counselors inform parents and legal guardians about the role of counselors and the confidential nature of the counseling relationship, consistent with current legal and custodial arrangements. Counselors are sensitive to and must respect the inherent rights and responsibilities of parents/guardians regarding the welfare of their children according to law. Counselors work to establish, as appropriate, collaborative relationships with parents/guardians to best serve clients. Defendant Jennifer Randall Reyes did not do any of those things in her care and treatment of Evan M. Harris, all of which was below the standard of care.

o.  The ACA Code of Ethics requires that counselors who are providing care to adult clients who lack the capacity to give voluntary consent to release confidential information, to seek permission from an appropriate third party to disclose information. It is clear that Evan did not have capacity and thus Defendant Jennifer Randall Reyes had a duty to do more to inform Evan's parents about his condition and changes in that condition. In this instance, Defendant Jennifer Randall Reyes did not document any such efforts, despite the evidence in the Fenstermacher report that Evan M. Harris lacked capacity to make decisions on his own.

p.  The ACA Code of Ethics requires counselors to read, understand, and follow the ACA Code of Ethics and adhere to applicable laws and regulations. Defendant Jennifer Randall did not consider her obligations under the ACA in dealing with Evan M. Harris, which was below the standard of care.

q.  The ACA Code of Ethics requires that counselors practice only within the boundaries of their competence, based on their education, training, supervised experience, state and national professional credentials, and appropriate professional experience. It was critical that Jennifer Randall failed to recognize Evan's cognitive issues and failed to recognize the complexity of his care needs. She did not seek supervision or make a case consultation with other professionals, which she was required to do. Jennifer Randall demonstrated a lack of understanding of Evan M. Harris' condition and was thus practicing in an area that her education and training were lacking. She should have sought the assistance of Paul Pelts, M.D. and other providers in meeting the needs of her client Evan M. Harris and to make certain her efforts were sufficient to meet the care needs of her client.

r.  Defendant Jennifer Randall Reyes failed to recognize that her client was deteriorating to a point that she was no longer in a position to provide the services that he needed in order to keep him alive. Her SI assessments were poorly documented and there was no routine assessment of his mood/affect, his thought processes or content. These would have provided her with evidence of the risk that Evan posed to himself, but she never did any of those things which the standard of care required.

s.  Defendant Jennifer Randall Reyes failed to recognize that the efforts of the Q & A staff to limit his contact with Evan's parents was detrimental to his well-being and to stop it, which the standard of care required her to do, and to report representatives from Q & A Associates, Inc. under the mandatory reporting statute.

t.  Defendant Jennifer Randall Reyes failed to document that she was even aware of what services, if any, Q & A Associates were providing, which she should have done.

u.  Defendant Jennifer Randall Reyes failed to recognize that the counseling she was offering Evan was not what Dr. Fenstermacher had recommended. It appears that Jennifer Randall paid very little or no attention to Dr. Fenstermacher's recommendations, which was below the standard of care.

69.  These breaches of the standard of care in providing services to Evan M. Harris were a proximate cause of pain, suffering and mental anguish of Evan M. Harris prior to his death; they were a proximate cause of his death; they deprived Evan M. Harris a chance of recovering from his mental illness and not hanging himself; and these Defendants' failures to meet the applicable standards of care increased the risk of harm to Evan M. Harris, which was a substantial factor in bringing about his death. Had these Defendants followed the accepted standard of care, it would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived.

70.    Plaintiff is entitled to all damages recoverable in this action against these Defendants, including compensatory damages, economic damages, and damages for the pain, suffering and mental anguish suffered by Evan M. Harris, prior to his death, and for the pain, suffering and mental anguish suffered by the beneficiaries of his Estate as a result of the death of Evan M. Harris, as well as other general damages in accordance with the wrongful death statute for the State of West Virginia.

**COUNT TWO: GROSS NEGLIGENCE IN PROVIDING COUNSELING SERVICES:**

71.    Friedrichs Harris as Administrator of the Estate of Evan M. Harris does hereby restate all allegations contained in this Complaint in this paragraph as if the same were reprinted herein.

72.    Plaintiff avers that these breaches of the standard of care outline in Count One were so far below the standard of care, they meet the definition of gross negligence and willful, wanton and reckless misconduct on the part of these Defendants.

73.    These breaches of the standard of care were a proximate cause of pain, suffering and mental anguish for Evan M. Harris prior to this death.

74.    These breaches of the standard of care were a proximate cause of the death of Evan M. Harris.

75.    Under the Medical Professional Liability Act, Plaintiff may recover punitive damages from these Defendants for their gross negligence and/or willful, wanton and reckless conduct.

76.     Plaintiff, on behalf of the beneficiaries of the Estate of Evan M. Harris, is entitled to all damages recoverable in a wrongful death action against these Defendants, including compensatory damages, economic damages, and damages for the pain, suffering and mental anguish suffered by Evan M. Harris prior to his death; for pain, suffering and mental anguish suffered by the beneficiaries of the Estate as a result of the loss of Evan M. Harris and an award for punitive damages in an amount to be proven at a trial in this action.

**COUNT THREE: JOINT VENTURE WITH OTHERS:**

77.     Friedrichs Harris as Administrator of the Estate of Evan M. Harris does hereby restate all allegations contained in this Complaint in this paragraph as if the same were reprinted herein.

78.     Plaintiff avers that had these Defendants were in a joint venture with Q & A Associates, Inc., Angela Shockley, Keith Bishop, Matthew Shockley, Sandy Schmiedeknecht and Tammy Robbins, all of whom are named Defendants in a civil action pending before U.S. District Court Judge Bailey and bearing Civil Action No. 2:16-cv-46 to provide programs and services for profit and benefit to each of the joint venturers.

79.     These Defendants combined with Q & A Associates, Inc., Angela Shockley, Keith Bishop, Matthew Shockley, Sandy Schmiedeknecht and Tammy Robbins to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge.

80.   This joint venture was created by contract and each exercised joint control and management of the persons in the programs offered by Q & A Associates, Inc. to accomplish the joint venture's aims.

81.   The joint venture with these Defendants included providing counseling services by these Defendants in accordance with the programs offered by Q & A Associates, Inc., Angela Shockley, Keith Bishop, Matthew Shockley, Sandy Schmiedeknecht and Tammy Robbins.

82.   Since the filing of the original action, Plaintiff Friedrichs Harris has learned that all of these individuals had worked together previous to their creation of Q & A Associates, Inc. and Big Top Counseling and Consulting Services, LLC at a place called Alldredge Academy and it was following the closure of that facility that Defendants began their discussions about this joint venture.

83.   As a direct and proximate result of the negligence and other wrongful conduct of these Defendants and the others in Civil Action No. 2:16-cv-46, Evan M. Harris is dead; they caused him to suffer immense pain, suffering and mental anguish, prior to his death; and they deprived Evan M. Harris a chance of recovering from his mental illness and not hanging himself; and these Defendants' failures to meet the applicable standards of care increased the risk of harm to Evan M. Harris, which was a substantial factor in bringing about his death. Had these Defendants followed the accepted standard of care, it would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived.

84.     Plaintiff is entitled to recover for the pain, suffering and mental anguish that Evan M. Harris suffered prior to his death.

85.     Plaintiff is entitled to all damages recoverable in a wrongful death action against these Defendants, including compensatory damages, economic damages, and damages for the pain, suffering and mental anguish as a result of the loss of Evan M. Harris, as well as other general damages in accordance with the wrongful death statute for the State of West Virginia.

86.     Plaintiff is entitled to a jury to hear this case with Civil Action No. 2:16-cv-46 as a combined action for purposes of apportionment of fault and for an award of damages.

**PLAINTIFF'S PRAYER FOR RELIEF**:

Friedrich Harris and the beneficiaries of the Estate of Evan M. Harris respectfully pray that they be granted relief against the Defendants as follows:

1.     For the Defendants' negligent conduct, they seek the following relief:

   a.     That the Court enter an order finding that the beneficiaries of the Estate of Evan Harris are entitled to damages for the pain suffering and mental anguish suffered by Evan M. Harris prior to his death; and for their damages for the wrongful death of Evan M. Harris;

   b.     That the Court award the beneficiaries of the Estate of Evan Harris general damages for all damages recoverable under the wrongful death statute;

   c.     That the Court enter an order awarding the beneficiaries of the Estate of Evan Harris such other relief as is proper and just arising from this matter.

2.     For the Defendants' grossly negligent and/or willful, wanton and reckless conduct, they seek the following relief:

      a.      That the Court enter an order finding that the beneficiaries of the Estate of Evan Harris are entitled to to damages for the pain suffering and mental anguish suffered by Evan M. Harris prior to his death; and for their damages for the wrongful death of Evan M. Harris;

      b.      That the Court award the beneficiaries of the Estate of Evan Harris general damages for all damages recoverable under the wrongful death statute;

      c.      That the Court enter an order awarding punitive damages against the Defendants for their grossly negligent and/or willful, wanton and reckless conduct; and

      d.      That the Court enter an order awarding the beneficiaries of the Estate of Evan Harris such other relief as is proper and just arising from this matter.

3. An Order granting consolidation of this action with Civil Action No. 2:16-cv-46.

4. An Order granting such other relief as the Court deems meet and proper, including pre and post judgment interest on any damages that are subject to interest, and an award of attorney's fees and costs in bringing this action.

**<u>A TRIAL BY JURY IS DEMANDED ON ALL ISSUES</u>**

                Respectfully submitted,

                Friedrichs Harris, Administrator

                s/David A. Sims

By:      _____

                David A. Sims (#5196)
                LAW OFFICES OF DAVID A. SIMS, PLLC
                P.O. Box 5349
                Vienna, West Virginia 26105
                304-428-5291
                304-428-5293 (fax)
                david.sims@mywvlawyer.com